## LE MOYNE v. COMMISSIONER OF INTERNAL REVENUE.

## CHICAGO SHIPPING & STORAGE CO. v. SAME.

## PARK FIRE PROOF STORAGE CO. v. SAME.
### Nos. 4329–4331.

Circuit Court of Appeals, Seventh Circuit.
Feb. 20, 1931.

Marvin Farrington, of Washington, D. C., and William Sherman Carson, of Chicago, Ill., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., F. Edward Mitchell and Sewall Key, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Dwight H. Green, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Petitioners feel aggrieved because of two adverse rulings by the Board of Tax Appeals. They complain (1) because the Chicago Company was not allowed (a) a yearly rental deduction of $60,000, or (b) a deduction of a reasonable amount for rent; and (2) be-

cause the Board refused to allow the Park Company's asserted loss of $28,780.04 in 1919 and $198.16 for the year 1918.

1. No. 4329. Petitioner Le Moyne has not favored us with a brief in support of his appeal. The errors by him assigned, as well as one not assigned, have been discussed, however, in the brief of respondent. While we might well assume, because of the absence of an argument in support of his assignments, that petitioner Le Moyne has abandoned his appeal, we have studied the entire record in No. 4329 and conclude that the order of the Board of Tax Appeals, as to Le Moyne, should be affirmed.

■ Nos. 4330 and 4331. These two appeals must be considered together because petitioners are classified by the Commissioner as affiliated companies. Petitioners do not question the propriety of this ruling, but they do insist that the Chicago Company should have been allowed a rent deduction from its reported income.

In refusing this deduction, the Board of Tax Appeals said: "From all of the evidence in this proceeding it is our opinion that the additional $42,000 a year alleged to have been paid as credited to Le Moyne was by virtue of his control of the two corporations. *We have no adequate evidence which clearly indicates that the excess amount was rental and not a distribution of profits in the guise of rental even if clearly paid or credited.* In Orange & Domestic Laundry Co., 6 B. T. A. 646, we denied a deduction of rental to a corporation owned by a single stockholder on a building owned by the stockholder and occupied by the corporation. There no evidence was introduced of payment or obligation to pay. *Here we are not convinced that the amount was rental.*"

It will thus be seen that the issue must be determined by an examination of the record to ascertain whether there was any support for this conclusion of the Board.

Petitioners point to testimony which supports their statement that Le Moyne, after securing a lease from the Park Company, subleased the same property to the Chicago Company. This testimony explains the different rentals on the ground that the brokers who were selling the bonds desired a responsible tenant who would pay a rental sufficient to meet interest and retirement demands of the mortgage. That there is plausibility in this contention must be conceded.

On the other hand, there are other facts which rather persuasively sustain the finding of the Board. For instance, there is no doc-umentary proof of the existence of this sublease from Le Moyne to the Chicago Company. While this was not necessary, perhaps, it was rather unusual in the case of a lease involving the payment of a $60,000 annual rental. Moreover, the records of the Chicago Company contain no reference to the existence of such a lease. Then, too, such payments as were made by the Chicago Company were not regularly paid in stipulated sums as rental is ordinarily paid. Neither the checks nor the stubs indicated that payments were for rent. On the contrary they indicated that Le Moyne was drawing out these sums "on account." Likewise, petitioners' statement respecting the lease for $18,000 and the simultaneously executed sublease for $60,000 hardly seems probable, though possible.

Added support for the Board's conclusion appears in Le Moyne's testimony. In reading this testimony, it should be kept in mind that he owned the stock of the lessor and he was the lessee in the first lease. In the sublease he was lessor, and he owned all of the stock of the sublessee. He said on cross-examination:

"The arrangement was that $18,000 a year should be paid to the Park Fire Proof Storage Company by the Chicago Shipping and Storage Company, not by myself. The Chicago Company was to pay me the surplus above $18,000 a year."

"Q. Do I understand you, then, no matter what profit the Chicago Shipping & Storage Company made after April 1, 1920, that $18,000 was deducted from this profit and this $18,000 was paid to the Park Fire Proof Storage Company, and whatever was left over that was to go to you?

"A. Yes. * * *"

"Q. Now, then, what instructions did you give at the Chicago Shipping & Storage Company as to the manner in which that should be handled?

"A. I told my bookkeeper to charge up the $18,000.00 to be paid over to the Park Company and that all profit left over after that was to be credited and paid to me. I don't think there was any formal lease between the Park Company and myself, * * * just a verbal arrangement whereby the Park Company leased the Wabash Avenue property to me."

Such a record disclosed a fact situation which warranted the Board of Tax Appeals in finding that the money paid to Le Moyne was not rental.

■ 2. Petitioners' contention that they were entitled to deduct net loss which occurred

during the fiscal years ending March 31, 1918, and March 31, 1919, must likewise be rejected. The statute, section 204(b), Revenue Act of 1918 (40 Stat. 1061), defines and limits the deductions for losses.[1] The time period therein specified precludes the allowance of the losses claimed by petitioners.

The order of the Board of Tax Appeals is affirmed.

[1] Sec. 204 * * * (b). If for any taxable year beginning after October 31, 1918, and ending prior to January 1, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount of such net loss, shall under regulations prescribed by the Commissioner with the approval of the Secretary be deducted from the net income of the taxpayer for the preceding taxable year. * * *